UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | | |
|---|---|---|
| TERRI G. MORTON, | ) | |
|    Plaintiff, | ) | Civil Action No. 7:13cv00496 |
| | ) | |
| v. | ) | **REPORT & RECOMMENDATION** |
| | ) | |
| GILBERT L. JOHNSON, | ) | By: Joel C. Hoppe |
|    Defendant. | ) | United States Magistrate Judge |

   Terri G. Morton has filed suit under 42 U.S.C. § 1983 alleging that Gilbert L. Johnson, a former prison guard, violated her rights under the Eighth Amendment to the United States Constitution. Compl. 2, ECF No. 1. After Johnson failed to respond to the Complaint, the Clerk entered default against him. ECF No. 22. Morton filed a *pro se* Motion for Default Judgment, ECF No. 26, and Johnson moved to set aside the Clerk's entry of default, ECF No. 38. The motions are before me by referral under 28 U.S.C. § 636(b)(1)(B). ECF No. 31.

   On May 29, 2015, the undersigned Magistrate Judge held an evidentiary hearing. Having considered Morton's pleadings, the parties' evidence and oral arguments, and the applicable law, I respectfully recommend that the District Court deny Johnson's motion to set aside default and grant Morton's motion for default judgment. I also recommend that the Court award Morton $2,000 in compensatory damages and $5,000 in punitive damages against Johnson in his individual capacity.

I. Facts & Procedural History

   Morton is an inmate at Fluvanna Correctional Center for Women ("FCCW") in Troy, Virginia. Compl. 1. In late March 2011, Morton was cleaning up a spill in the prison's Mental Health Department. *See id.* at 2–3. Johnson "walked up and told [her she] looked like [she] needed a hug." *Id.* at 3. Johnson then hugged Morton, touched her breast, and "rubbed down

1

[her] stomach down to [her] private area and felt [her] up." *Id.* When Morton "got very upset," Johnson said that "it's alright and he was going to be in the building all week." *Id.* On November 8, 2011, Morton filed a grievance stating that Johnson sexually assaulted her the previous March. *See* Pl. Ver. Stmnt. Ex. A, ECF No. 3. Two days later, Major J. E. Carroll responded that "this issue ha[d] already been addressed through the court system."[1] *Id.*

Morton filed this lawsuit *pro se* on October 21, 2013, alleging that, by sexually assaulting her, Johnson violated her Eighth Amendment right to be free from cruel and unusual punishment. *See* Compl. at 2. She sought compensatory and punitive "damages for pain and suffering" against Johnson in his individual capacity. *See id.* On January 23, 2014, Johnson executed and returned a waiver of service form, in which he acknowledged receiving a copy of Morton's complaint. ECF No. 20. By signing that form, Johnson also acknowledged that he "must file and serve an answer" or a Rule 12 motion by March 8, 2014, and that "a default judgment will be entered against" him if he failed to do so. *See id.* That deadline passed without word from Johnson. The Clerk entered Johnson's default on March 17, 2014.

On October 21, 2014, the Court informed Morton that, because her complaint did not specify a damages amount, she must apply for a default judgment before the Court could enter

---

[1] In October 2011, Johnson pled guilty to sexual battery of an inmate by a correctional employee, in violation of Virginia Code § 18.2-67.4, and was sentenced to one year in jail with all but 30 days suspended. *See* Case Details, *Commonwealth v. Johnson*, No. CR11000259-00 (Fluvanna Cir. Ct. Oct. 14, 2011). Johnson admits that Morton was the victim of that offense.

A person is "guilty of sexual battery if he sexually abuses . . . an inmate who has been . . . convicted and sentenced to confinement in a state . . . correctional facility" and the person is an employee of the correctional facility, is in a position of authority over the inmate, and knows that the inmate is under the correctional facility's jurisdiction. Va. Code § 18.2-67.4(A)(ii) (2007). "Sexual abuse means an act committed with intent to sexually molest, arouse, or gratify any person," including where the defendant "intentionally touches the [victim's] intimate parts or material directly covering such intimate parts." *Id.* § 18.2-67.10(6)(a) (2004). The term "intimate parts" includes genitalia, groin, and breast. *Id.* § 18.2-67.10(2).

2

judgment and award damages. ECF No. 25. Morton timely filed a *pro se* written response, which the Court construed as an application for default judgment. ECF Nos. 26, 27. The Court set the matter for a Rule 55(b) hearing to be held on April 16, 2015. ECF No. 28.

On April 9 and 10, Johnson called the Lynchburg Clerk's Office to say that he received Morton's motion and that he might appear at the hearing. On April 15, Johnson asked the Court to reschedule the hearing so that he could find an attorney to represent him. Def. Mot. for Extension of Time, ECF No. 30. The presiding District Judge granted Johnson's request and referred the matter to the undersigned Magistrate Judge on the same day. The Court held a Rule 55(b) hearing on May 29, 2015. At the hearing, Jordan McKay, Esq., entered an appearance for Morton, and Johnson proceeded *pro se*.

Before hearing evidence on damages, the Court inquired whether Johnson contested the entry of default. Johnson acknowledged that he waived service in January 2014 and explained that he did not respond to Morton's lawsuit by the March 2014 deadline because he was incarcerated between February 2014 and July 2014. *See also id.* ("[T]he reason for the default was because I was incarcerated from February 2014 to July 2014."). Johnson said that he did not contact this Court again until April 2015 because he "just forgot all about" the lawsuit until he received Morton's motion for default judgment. The Court construed Johnson's statements as an oral motion to set aside the Clerk's entry of default. *See* Fed. R. Civ. P. 7(b)(1)(A), 55(c). The Court then invited the parties to present evidence.

Morton testified that her emotional condition and mental health were "fine" before Johnson assaulted her in late March 2011, and she did not take any psychiatric medications. Morton also testified that she has "had asthma all [her] life, but it was under control" before

3

Johnson's assault. By "under control," Morton explained that she took "breathing treatments maybe once a day" and had a back-up inhaler.

After the March 2011 assault, a mental-health counselor spoke with Morton as a matter of prison "protocol" and "to make sure that [she] was okay." Morton has continued to meet with the counselor since that time to "talk about" Johnson's assault. Morton also testified that the assault brought back memories of two siblings molesting her when she was between the ages of four and ten. Morton has attended classes such as "Mindful Meditation," "Seeking Power and Safety," and "The Hero Within" to help her process the sexual abuse and control her anxiety.

Around October 2013, Morton "started having panic attacks and anxiety attacks that caused [her] asthma to act up." Morton explained that her symptoms manifested at that time, rather than two years before at the time of the assault, because she had tried not to think about or otherwise deal with the assault to avoid revisiting the trauma of her abuse as a child. At her friends' behest, she filed this lawsuit, causing her to "relive" the assault and revisit her childhood trauma. Morton testified that she now takes breathing treatments three times a day and uses two regular inhalers in addition to her back-up inhaler. Morton also described "multiple" occasions after October 2013 where she "was walking and [her] whole body went numb and [she] couldn't breathe." She testified that prison doctors prescribed Paxil after her first panic attack to "help [her] sleep and to ease [her] anxiety," but the antidepressant just made her panic and anxiety attacks worse. Doctors took Morton off Paxil after "maybe two months" and have not prescribed any other psychiatric medications. Morton testified that she still suffers from panic and anxiety attacks, although she did not say how frequently.

Morton testified that continuing to talk about Johnson's assault and her past sexual abuse in counseling "is making it a little easier to deal with." Thus, she expects to keep attending "recommended" mental-health classes and treatment until she leaves FCCW in June 2017.

At the hearing, Morton's counsel requested $50,000 each in compensatory and punitive damages.

Johnson did not testify about his version of events, cross-examine Morton, or otherwise contest the facts stated in her sworn complaint. During argument, Johnson said that he "pled guilty to giving [Morton] a hug and that was it." As to damages, Johnson said "there should be no damages awarded. She has always been through emotional stuff and being locked up is emotional and causes stress and panic and I think nothing I did had anything to do with that."

## II. Standards of Review

*A.   Setting Aside Default*

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). A court "may set aside an entry of default for good cause" shown. Fed. R. Civ. P. 55(c). In making this determination, the court should consider whether (1) the defaulting party "has a meritorious defense" to a claim against it; (2) the party was personally responsible for its default; (3) the party "act[ed] with reasonable promptness" in moving to set aside default, or has "a history of dilatory action"; (4) there are "sanctions less drastic" than default judgment; and (5) setting aside default would prejudice the plaintiff. *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 204–05 (4th Cir. 2006); *see also Colleton Prep. Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417–18 (4th Cir. 2010). The Fourth Circuit has "expressed a strong preference . . . that claims and defenses be disposed

5

of on their merits." *Colleton Prep. Acad.*, 616 F.3d at 417 (collecting cases). Thus, while the decision to set aside default is left to the district court's discretion, "Rule 55(c) motions must be liberally construed" to avoid the potentially "onerous consequences of defaults." *Id.*

B.  *Default Judgment*

"If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing." Fed. R. Civ. P. 55(b)(1). "In all other cases, the party must apply to the court for a default judgment," Fed. R. Civ. P. 55(b)(2), and the "court must . . . determine whether the well-pleaded allegations in the . . . complaint support the relief sought,"[2] *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780–81 (4th Cir. 2001) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact."); *see also DIRECTV, Inc. v. Pernites*, 200 F. App'x 257, 258 (4th Cir. 2006) (per curiam) ("[A] defendant [in default] is not held to admit facts that are not well-pleaded or to admit conclusions of law.").

"A defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered." *Pernites*, 200 F. App'x at 258. Because damages are necessarily uncertain, the court must make an independent determination of the sum to be awarded. *Int'l Painters & Allied Trades Indus. Pension Fund v. Capital Restoration & Painting Co.*, 919 F. Supp. 2d 680, 684 (D. Md. 2013) (citing Fed. R. Civ. P. 54(c)); *see also* Fed. R. Civ. P. 8(b)(6). The court may hold a hearing when it needs to conduct

---

[2] The court must also satisfy itself that it has subject matter jurisdiction over the action and personal jurisdiction over the defaulting defendant. *Berthiaume v. Doremus*, 998 F. Supp. 2d 465, 470 (W.D. Va. 2014) (Moon, J.).

6

an accounting, determine the amount of damages, establish the truth of any allegation, or investigate any other matter. Fed. R. Civ. P. 55(b)(2)(A)–(D).

III. Discussion

A.     *Johnson's Motion*

Morton alleges that Johnson's sexually abusive conduct violated her Eighth Amendment right to be free from cruel and unusual punishment and that Johnson is personally liable under 42 U.S.C. § 1983 for her resulting emotional injuries. Compl. 2–3; *cf. Ellis v. Elder*, No. 7:08cv642, 2009 U.S. Dist. Lexis 7814, at *7 (W.D. Va. Feb. 4, 2009) ("A prison guard may violate the Eighth Amendment by . . . sexually assaulting an inmate" and the "emotional harm[s] suffered by a victim of such abuse are compensable injuries under § 1983."). Johnson does not dispute that Morton's factual allegations state a claim against him, and he has not seriously tried to defend the action. *See* Fed. R. Civ. P. 8(b)(1)(A), (c)(1).

At the hearing, Johnson acknowledged being convicted of sexually battering Morton, but he attempted to minimize his conduct. By pleading guilty to sexual battery, however, Johnson admitted that he "sexually abused" Morton by "intentionally touch[ing]" her breast, genitalia, or groin "with intent to sexually molest, arouse, or gratify." Va. Code § 18.2-67.4, -67.10. Johnson's unsworn statement describing that abuse as a harmless "hug" is not a meritorious defense to Morton's otherwise properly supported Eighth Amendment claim. *See Vick v. Wong*, 263 F.R.D. 325, 329 (E.D. Va. 2009) (noting that a "meritorious defense" requires evidence that "would permit a finding for the defaulting party"); *cf. Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). Indeed, Johnson did not

7

testify about his version of events, cross-examine Morton, or otherwise contest the facts stated in her sworn complaint.

Johnson is personally responsible for his default because, as a *pro se* party, he "bears sole responsibility for his litigation conduct." *Silvious v. RR Donnelley & Sons*, No. 5:10cv116, 2011 WL 3846775, at *3 (W.D. Va. Aug. 29, 2011). *Pro se* litigants are of course entitled to some leeway in our courts. *See, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But Johnson's *pro se* status does not excuse his failure to comply with this Court's orders and procedural rules. *See Hasan v. Fairfax Cnty. Sch. Bd.*, 405 F. App'x 793, 794 (4th Cir. 2010). Johnson was notified in January 2014 that the Court would enter default judgment against him if he did not respond to Morton's lawsuit by March 8, 2014. He did not respond before he was incarcerated in February 2014, and he admits that he "just forgot all about" the lawsuit after he was released from jail in July 2014. Johnson did not contact this Court again until April 2015 when he received Morton's motion for default judgment and notice of the Rule 55(b) hearing. Johnson's personal role in his default and history of deliberate, dilatory action weigh heavily in favor of denying his motion. *Cf. Mitter v. Soc. Sec. Admin.*, No. 4:13cv21, 2014 WL 2442241, at *1 (W.D. Va. May 30, 2014) (dismissing a *pro se* plaintiff's action for failure to prosecute where she repeatedly and unjustifiably failed to comply with the court's deadlines and procedural rules).

"[A] panel of the Fourth Circuit, in an unpublished decision, has noted that 'the extreme sanction of judgment by default is reserved [only] for cases . . . where the party's noncompliance represents bad faith or complete disregard for the mandates and procedure and the authority of the trial court.'" *Parks v. Discount Box & Pallet, Inc.*, No. 5:12cv81, 2013 WL 662951, at *4 (W.D. Va. Feb. 22, 2013) (quoting *Mobil Oil Co. de Venez. v. Parada Jimenez*, 989 F.2d 494, 1993 WL 61863, at *3 (4th Cir. 1993) (unpub. table decision)). I do not find that Johnson has

8

acted in bad faith in this case. His "utter failure to defend this matter" between January 2014 and April 2015 or to provide any acceptable justification for that failure, however, does not inspire confidence that he respects this Court's rules and authority. *CoStar Realty Info., Inc. v. Field*, 737 F. Supp. 2d 496, 502 (D. Md. 2010) ("[T]he Court believes that Field's utter failure to defend this matter or to otherwise cooperate . . . warrants . . . the entry of default judgment and finds that a less drastic sanction will be ineffective."). Johnson also has not suggested that a less drastic sanction would reasonably ensure his future cooperation in this matter. *Cf. Colleton Prep. Acad.*, 616 F.3d at 418 (criticizing the district court for failing to explain why the defendant's proposed alternative sanction would be inappropriate). These factors also weigh in favor of denying Johnson's motion.

The final factor, whether setting aside Johnson's default would prejudice Morton, is neutral. *See generally Capital Concepts, Inc. v. CDI Media Grp. Corp.*, No. 3:14cv14, 2014 WL 3748249, at *7 (W.D. Va. July 29, 2014) (Moon, J.) (listing relevant factors in determining prejudice). While the case has languished for 18 months, "delay in and of itself does not constitute prejudice to the opposing party." *Colleton Prep. Acad.*, 616 F.3d at 418. And, of course, "no cognizable prejudice inheres in requiring" Morton to prove her case or in allowing Johnson to defend himself on the merits. *Id.* at 419 & n.6. On this record, I find that one neutral factor does not offset the four factors weighing in favor of finding that Johnson has not shown good cause for setting aside his default. Accordingly, I recommend that the District Court deny Johnson's motion to set aside the Clerk's entry of default.

B.   *Morton's Motion*

Johnson's default itself does not authorize this Court to enter judgment against him. *See Pernites*, 200 F. App'x at 258. The Court must first "determine whether the well-pleaded

9

allegations in [Morton's] complaint," accepted as true, state a cognizable claim against Johnson and "entitle [her] to the relief sought."[3] *Ryan*, 253 F.3d at 780–81. If Morton clears that threshold, the Court must then determine what damages award is supported by the record. *Capital Restoration & Painting Co.*, 919 F. Supp. 2d at 684.

  *1. Claim & Relief Sought*

  The Eighth Amendment's prohibition of cruel and unusual punishment "protects 'the basic concept of human dignity' and forbids conduct that is 'so totally without penological justification that it results in the gratuitous infliction of suffering.'" *Walker v. Durham*, No. 5:12-CT-3186-BO, 2014 WL 4728719, at *6 (E.D.N.C. Sept. 23, 2014) (quoting *Gregg v. Georgia*, 428 U.S. 153, 182–83 (1976)). "An inmate has a 'constitutional right to be secure in her bodily integrity and free from attack by prison guards,' . . . includ[ing] the right to be free from sexual abuse." *Carr v. Hazelwood*, No. 7:07cv1, 2007 WL 4410694, at *2 (W.D. Va. Dec. 14, 2007) (quoting *Hovater v. Robinson*, 1 F.3d 1063, 1068 (10th Cir. 1993) (citing *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003)). Even without lasting physical injury, officer-on-inmate sexual abuse can support an Eighth Amendment claim if the officer's alleged conduct is "incompatible with 'contemporary standards of decency.'" *Ellis*, 2009 U.S. Dist. Lexis 7814, at *7 (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993)). "In stating such a claim, . . . the inmate must allege facts on which [s]he could prove that the unwanted touching had some sexual aspect to it; [her] own perceptions alone that the contact was of a sexual nature are not sufficient." *Id.* (citing *Berryhill v. Schriro*, 137 F.3d 1073, 1076 (8th Cir. 1998)).

---

[3] This Court has subject-matter jurisdiction over Morton's action because it arises under federal law, 28 U.S.C. § 1331, and it has personal jurisdiction over Johnson because he resided in Virginia when Morton filed her complaint, Fed. R. Civ. P. 4(k)(1)(A); Va. Code § 8.01-328.1.

Morton alleges that Johnson hugged her, touched her breast, and "rubbed down [her] stomach down to [her] private area and felt [her] up," and that this unwanted touching was later "handled in court." Compl. 3. Johnson admits that he was prosecuted for this incident and pled guilty to sexual battery—i.e., intentionally touching Morton's breast, groin, or genitalia with intent to sexually molest, arouse, or gratify. Va. Code § 18.2-67.4, -67.10. Criminal sexual battery is neither a legitimate part of Morton's punishment nor compatible with contemporary standards of decency. *See Carrington v. Easley*, No. 5:08-CT-3175-FL, 2011 U.S. Dist. Lexis 56168, at *3–4, 12 (E.D.N.C. Feb. 8, 2011) (Webb, M.J.). Accordingly, I find that Morton's undisputed allegations state an Eighth Amendment claim under 42 U.S.C. § 1983. *See, e.g.*, *id.* at *12 (plaintiff's undisputed allegation that the defendant prison guard "grabb[ed] Plaintiff's penis and attempt[ed] to perform fellatio" on him stated an Eighth Amendment claim, particularly where the guard "was criminally charged for the incident").

Morton seeks compensatory and punitive damages for emotional pain and suffering. Compl. 2. Section 1983 "create[d] a species of tort liability" to compensate individuals for actual injuries, including emotional distress, caused by a defendant's unconstitutional conduct. *Carey v. Piphus*, 435 U.S. 247, 253, 263–64 (1978). Under the Prison Litigation Reform Act ("PLRA"), however, Morton can recover compensatory damages for a "mental or emotional injury suffered while in custody" only with "a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e) (citing 18 U.S.C. § 2246); *see Jones v. Price*, 696 F. Supp. 2d 618, 625 (N.D. W. Va. 2010) ("[T]he PLRA does not bar recovery of [non-compensatory] damages in the absence of a physical injury where an inmate can show an injury of constitutional dimensions.").

11

The PLRA does not define the term "physical injury." 42 U.S.C. § 1997e(e); *Liner v. Goord*, 196 F.3d 132, 135 (2d Cir. 1999). The term "sexual act" includes "the penetration, however slight, of the . . . genital opening of another by a hand or finger . . . , with intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(2)(C). It excludes non-penetrative "sexual contact," or the "intentional touching, either directly or through the clothing, of the genitalia, . . . groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." *Id.* § 2246(3). Liberally construed, Morton's allegation that Johnson "rubbed . . . down to [her] private area and felt [her] up," Compl. 3, could show "the commission of a sexual act." *See* 18 U.S.C. § 2246(2)(C). The Court need not decide that question, however, if sexual battery itself shows "physical injury."

Several courts have found that intentional, unwanted sexual touching can show a sufficient "physical injury" to authorize compensatory damages for the inmate's resulting mental and emotional distress. *See, e.g.*, *Kahle v. Leonard*, 563 F.3d 736, 739, 741–42 (8th Cir. 2009); *Liner*, 196 F.3d at 135–36; *Cleveland v. Curry*, No. 07cv02809-NJV, 2014 WL 690846, at *6–7 (N.D. Cal. Feb. 21, 2014); *Carrington v. Easley*, No. 5:08-CT-3175-FL, 2011 WL 2132850, at *3 (E.D.N.C. May 25, 2011) (Flanagan, C.J.); *Marrie v. Nickels*, 70 F. Supp. 2d 1252, 1264 (D. Kan. 1999) (citing *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)). In *Cleveland*, for example, the district court found "physical injury" where the defendant prison guard "grabbed and squeezed the genitalia of five inmates, some numerous times, while performing clothed-body searches." 2014 WL 690846, at *7–8. Similarly, the district court in *Marrie* found "physical injury" where the defendant prison guard "placed his hands into [the inmate's] pants, caressed his buttocks, and stroked his genitalia" on one occasion and, on a separate occasion, another

12

guard "caressed [the inmate's] lower stomach, caressed his buttocks, and struck him in the genitals with sufficient force to cause him several hours of pain." 70 F. Supp. 2d at 1257, 1264. The Second and Eighth Circuits have affirmed district courts' findings that sexual contact itself constitutes "physical injury" without describing in detail the guard's alleged conduct. *Liner*, 196 F.3d at 135 ("[T]he alleged sexual assaults qualify as physical injuries as a matter of common sense."); *Kahle*, 563 F.3d at 739 ("He entered Kahle's cell three times, forcing sexual contact with her.").

This approach is consistent the well-established understanding that the ban on "cruel and unusual punishment[] necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind" or incompatible with our society's "contemporary standards of decency," *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). *See Liner*, 196 F.3d at 135. Morton's undisputed allegation that Johnson intentionally and without her consent "rubbed down to" and "felt up" her "private area" is incompatible with contemporary standards of decency and, thus, states a claim that may warrant compensatory damages.

Punitive damages are available under section 1983 "when the defendant's conduct . . . involves reckless or callous indifference to [the plaintiff's] federally protective rights." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Johnson's conduct at least involved "reckless indifference" to Morton's Eighth Amendment right to be secure in her bodily integrity and free from sexual attacks while incarcerated. *See Carrington*, 2011 WL 2132850, at *5. Accordingly, I find that "the well-pleaded allegations in [Morton's] complaint support the relief sought," *Ryan*, 253 F.3d at 780, and that there "is a sufficient basis in the pleadings" for this Court to enter default judgment against Johnson in his individual capacity, *Pernites*, 200 F. App'x at 258.

13

2. *Damages*

a. *Compensatory Damages*

The Court must award damages to fairly compensate Morton for her injuries, but only to the extent supported by "competent, sufficient evidence" in the record "'showing the nature and circumstances of the [constitutional] wrong and its effect on [Morton].'" *Price v. City of Charlotte*, 93 F.3d 1241, 1246, 1250 (4th Cir. 1996) (quoting *Carey*, 435 U.S. at 263–64). Morton's testimony "alone[] can support an award of compensatory damages" if the "evidence of emotional distress [is] demonstrable, genuine, and adequately explained." *Id.* at 1251. Such evidence might include testimony demonstrating (1) the nature and degree of emotional distress Morton suffers because of Johnson's sexual abuse, (2) how her emotional distress manifests itself mentally or physically, (3) specific changes in Morton's emotional condition or behavior, and (4) her need for post-abuse counseling or medication. *See generally id.* at 1254–56.

In *Price*, for example, the Fourth Circuit held that the plaintiffs' "vague, conclusory testimony" that they felt degraded, "humiliated, betrayed, and deceived by the City's invidiously discriminatory promotions policy" did not support a $3,000 compensatory-damages award in part because the testimony did not demonstrate how the feelings manifested. *Id.* at 1248, 1255. In *Carrington*, the district court declined to award compensatory damages where the inmate testified that he "suffered mental and emotional distress in the form of nightmares, feelings of defenselessness and anxiousness, panic attacks, and episodes of bed-wetting" after the guard's attempted fellatio, but he did not produce evidence that he sought any kind of treatment for his emotional distress. *Carrington*, 2011 WL 2132850, at *4. Conversely, in *Morris v. Eversley*, the district court vacated a $500 compensatory-damages award where the inmate testified that "she suffer[ed] from high blood pressure and ha[d] recurring nightmares and flashbacks," 2004 WL

14

171337, at *1, after the defendant prison guard tried to rape her. *See Morris v. Eversley,* 343 F. Supp. 2d 234, 237–38 (S.D.N.Y. 2004) ("[T]he Court held that the jury's damages were so grossly inadequate as to shock the conscience."). A new jury awarded the inmate $1,000 in compensatory damages, which the district court upheld. *See id.* at 238.

I credit Morton's testimony describing how Johnson's sexual abuse affected her emotionally, as well as the specific changes in Morton's mental-healthcare needs after the March 2011 assault. Although Morton's most serious symptoms did not manifest until two years after the assault, her explanation was credible and went unchallenged. Morton testified that the assault brought back traumatic memories of childhood sexual abuse and that she now suffers from persistent anxiety—not just garden-variety humiliation, embarrassment, or degradation.[4] Unlike the plaintiffs in *Morris* and *Carrington*, Morton also testified that she has regularly attended counseling and self-empowerment classes to help her process that abuse and control her anxiety. That said, I do not find that Morton produced sufficient evidence to support a $50,000 compensatory-damages award. For example, Morton did not produce medical records to corroborate her testimony that her anxiety exacerbated her asthma or that she suffered "multiple" panic attacks. Morton took Paxil for "maybe two months" after her first panic attack in October 2013, but FCCW doctors did not prescribe other anti-anxiety medications after discontinuing Paxil. Accordingly, I recommend that the District Court award Morton $2,000 in compensatory damages.

---

[4] Like any tortfeasor, Johnson must take his victim as he finds her. *Vaughn v. Nissan Motor Corp. USA, Inc.*, 77 F.3d 736, 738 (4th Cir. 1996). "Different people, with different sensitivities, respond emotionally in different ways," and Johnson "is responsible for the emotional damage he caused" Morton to actually suffer. *Johns v. Stillwell*, No. 3:07cv63, 2009 WL 2390991, at *8 n.6 (W.D. Va. Aug. 4, 2009) (Moon, J.).

15

### b. *Punitive Damages*

"[W]hen the defendant's conduct . . . involves reckless or callous indifference to [the plaintiff's] federally protected rights," the court may award punitive damages to "punish the defendant for his outrageous conduct and to deter him and others like him from similar conduct in the future." *Smith*, 461 U.S. at 54, 56. Johnson's conduct unquestionably involved callous indifference to Morton's constitutional right to be secure in her bodily integrity and free from sexual attacks by a prison guard. *Carrington*, 2011 WL 2132850, at *5. At the hearing, Johnson described his attack as "just . . . a hug" and said that he had "nothing" to do with Morton's resulting injuries because "being locked up is emotional and causes stress and panic." Johnson's indifferent and dismissive comments suggest that he does not fully appreciate the constitutional magnitude of his conduct. "Sexual abuse is repugnant to contemporary standards of decency" and simply "not part of the penalty that criminal offenders pay for their offenses against society." *Cochran*, 339 F.3d at 1212–13. Thus, punitive damages are appropriate in this case.

However, the evidence before the Court does not support counsel's proposed $50,000 award. *Compare, e.g.*, *Etters v. Shanahan*, No. 5:09-CT-3187-D, 2013 WL 787344, at *2, *7 (E.D.N.C. Feb. 6, 2013) (awarding $100,000 in punitive damages against officer who forced inmate to perform oral sex "multiple" times and "brutally" raped inmate at least twice), *and Morris*, 343 F. Supp. 2d at 237 (noting a jury's $15,000 punitive-damages award against guard who attempted to rape inmate); *with Cleveland*, 2014 WL 690846 at *1, *10 (affirming jury's $5,000 punitive-damages award against guard who "squeezed [inmates'] penises and/or their scrotums for several seconds while performing clothed-body searches"), *and Carrington*, 2011 WL 2132850, at *5 (awarding $5,000 in punitive damages against guard who grabbed inmate's penis and tried to perform oral sex on him before the inmate pushed the guard away). I

16

recommend that the District Court award Morton $5,000 in punitive damages to punish Johnson for his reprehensible conduct and to deter other correctional officers from committing similar abuses against the individuals placed in their custody. *See Cleveland*, 2014 WL 690846, at *10; *Carrington*, 2011 WL 2132850, at *5.

IV. Conclusion

Having considered Morton's pleadings, the parties' evidence and oral arguments, and the applicable law, I find that Johnson has not shown good cause to set aside his default and that Morton is entitled to the kind—but not the amount—of relief sought in this action. Accordingly, I respectfully recommend that the presiding District Judge **DENY** Johnson's motion to set aside the Clerk's entry of default, ECF No. 38, **GRANT** Morton's motion for default judgment, ECF No. 26, and **ENTER** Judgment for Morton in an amount of $2,000 in compensatory damages and $5,000 in punitive damages against Johnson in his individual capacity.

**<u>Notice to Parties</u>**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the Honorable Norman K. Moon, Senior United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to all counsel of record and unrepresented parties.

                                        ENTERED: June 29, 2015

                                        Joel C. Hoppe
                                        United States Magistrate Judge